OPINION
Defendant-appellant Michael Dye appeals his conviction and sentence from the Licking County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On May 8, 1998, appellant was indicted by the Licking County Grand Jury on one count of rape in violation of R.C.2907.02(A)(1)(b). The indictment stated that the victim was less than thirteen (13) years of age. Appellant, on May 20, 1998, filed a document captioned "PLEAS" stating that he was entering pleas of not guilty and not guilty by reason of insanity to the charge contained in the indictment. On May 27, 1998, appellant entered pleas of not guilty and not guilty by reason of insanity. Appellant's case (Case No. 97-CR-171) was voluntarily dismissed on November 14, 1997, and then refiled as Case No. 98-CR-169. A Judgment Entry memorializing the dismissal and refiling was filed on June 4, 1998. On December 28, 1998, the day before appellant's jury trial, appellant's counsel filed a Motion for Competency Review "based on her observations and conversations with Mr. Dye, her belief that Mr. Dye is unable to assist in the presentation of his defense and does not understand the gravity of the situation he is now facing." Appellant's counsel, in the affidavit attached to the motion, stated as follows: "1. I spoke with my client, Michael Dye, most recently on Tuesday, December 22, 1998, and Monday, December 28, 1998. He does not appear able to discuss rationally the proceedings in his case. 2. He continues to maintain that he plans to have the statement attributed to him by the police suppressed. He appears unable to grasp the fact that the court has already ruled on this issue, insisting that if the Judge denies the motion (not because the Judge denied the motion), he can be sued. 3. He does not appear to be able to understand the details of his case or the plea arrangement which was proposed by the State of Ohio. His comment regarding almost certain life imprisonment was "It's no big thing." 4. I have spoken with the Licking County Justice Center nurse Debbie, who verifies that Michael was on prescribed medication in June, 1997, at the time of his evaluation, but he has not been on medication at the Justice Center since February, 1998. 5. Michael refuses to wear street clothes to his trial, saying that he looks ok in jail blues. He appears unable to appreciate the prejudicial affect such a decision will have on a jury. 6. The Justice Center permitted Michael's mother, Sharon Wolfe, to be present for the interview today. She indicates that she does not believe he is competent to understand the ramification of his decisions. She believes that if he were properly medicated, he would be able to make a rational decision regarding this case and the other case for which he stands trial in March."
A previously court ordered competency evaluation conducted approximately one year and a half previously by NetCare had found appellant to be competent. Based upon NetCare's report, the trial court had found appellant competent to stand trial. Appellant's counsel requested that a hearing be held on her motion for a second competency review prior to the commencement of the jury trial. On December 29, 1998, the morning of the trial, appellant's counsel orally moved the trial court for a second evaluation of appellant's competency to stand trial. After questioning appellant, the trial court denied appellant's motion. On December 29, 1998, the jury returned with a verdict finding appellant guilty of rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree. Thereafter, appellant was sentenced to five (5) years in prison. A Judgment Entry memorializing the verdict and sentence was filed on December 30, 1998. It is from his conviction and sentence that appellant prosecutes his appeal, raising the following assignment of error:
 THE TRIAL COURT COMMITTED HARMFUL ERROR IN DETERMINING THAT THE DEFENDANT APPELLANT WAS NOT ENTITLED TO A SECOND EVALUATION OF HIS COMPETENCY TO STAND TRIAL. I
Appellant, in his sole assignment of error, challenges the trial court's denial of appellant's motion for a second competency evaluation. Appellant specifically contends that the trial court's denial of his motion constituted harmful error. R.C. 2945.37(B) states, in relevant part, as follows:
 "[i]n a criminal action in a court of common pleas, . . . the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section."
While R.C. 2945.37 clearly provides that a hearing must be held, "it does not specifically state what procedure a court must follow within such a hearing." State v. Bailey (1992), 90 Ohio App.3d 58,66. Pursuant to R.C. 2945.371(A), if the issue of a defendant's competence to stand trial is raised, "the court may order one or more evaluations of the defendant's present mental condition.". (Emphasis added). No competency evaluation, therefore, is required by R.C. 2945.371 every time that the issue of a defendant's mental condition is raised. Rather, "the wording of the statute implies that the ordering of an examination is a matter within the discretion of the trial court." Bailey, supra at 67. As stated by the court in Bailey, "Taken as a whole, the provisions of R.C. 2945.37 and 2945.371 support the inference that when the initial hearing on a competency motion is held, the trial court is only required to give the defendant, or his counsel, the chance to submit evidence on the issue. If this evidence raises a genuine question as to the defendant's competency, the court can order that one or more evaluations be performed. If it does not, the court can find the defendant competent and proceed to trial." Id.
In order to find that the trial court abused its discretion in denying appellant's request for a second competency evaluation, we must find that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. In the case sub judice, a court ordered competency examination of appellant conducted by NetCare in July 18, 1997, approximately a year and a half before the request for a second competency examination, found appellant competent to stand trial. While appellant argues now that the trial court abused its discretion in denying his request for a second competency evaluation, we do not agree. The trial court, before denying appellant's request, conducted an in-depth interview of appellant. The following is from the transcript of such interview:
 "THE COURT: The Court notes that there was a competency report filed in this case July of `97 — it was filed — determining that the defendant was competent.
 The Court will inquire of the defendant. Mr. Dye, would you please state your name for the record.
MR. DYE: Michael J. Dye, Junior. I think it is.
THE COURT: What is your present address?
MR. DYE: 9458 Pleasant Valley Road, Frazeysburg, Ohio 43832.
 THE COURT: And you are now incarcerated in the Licking County Justice Center; is this correct?
MR. DYE: That's right.
THE COURT: And how long have you been there?
MR. DYE: For three months and a couple days.
THE COURT: Are you taking any medication at the present time?
MR. DYE: No, sir.
THE COURT: Are you suppose to?
MR. DYE: Yes, sir.
 THE COURT: The fact that you're not taking this medication, does that affect your ability to talk to your attorney?
 MR. DYE: I mean, her and my mom and everyone believes that me not taking my medication makes me make crazy decisions, but I don't see it, but they do, though.
 THE COURT: You understand what she's saying to you when she talks to you?
MR. DYE: I think I do. I mean —
THE COURT: You understand where you are now?
MR. DYE: Yeah, I'm in the courtroom.
THE COURT: Do you know why you're here?
MR. DYE: Yeah.
THE COURT: Why are you here?
MR. DYE: For a rape charge back in `96.
THE COURT: You understand this a jury trial today?
MR. DYE: Yeah.
THE COURT: Have you talked to your attorney about this?
MR. DYE: Briefly.
THE COURT: Do you know what the jury does?
MR. DYE: Yeah. I been through the jury trial once before.
THE COURT: You understand who I am?
MR. DYE: Yeah, you're the Judge.
 THE COURT: Do you have any questions about what is about to happen today?
MR. DYE: No.
 THE COURT: Do you feel that you're capable of proceeding and assisting your attorney in your defense today if this goes to trial?
MR. DYE: Do what now?
 THE COURT: Do you think you're capable of going ahead today and going through the trial? You can help her and answer questions that she might ask of you?
MR. DYE: Well, I don't know about that.
 THE COURT: If she asks you a question, can you answer it, do you think?
MR. DYE: I think.
THE COURT: Depends on what the question is.
 MR. DYE: Yeah, depends on what the question is, but I think I can.
 THE COURT: Counsel want to approach? Mr. Dye, you understand this matter is set for a jury trial today; is that correct?
MR. DYE: Yeah.
 THE COURT: And you had a motion to suppress in this court; you understand what that is?
MR. DYE: Yeah.
 THE COURT: You understand I denied that motion to suppress that evidence, and what that means is the statement that you made to the — I believe it was the Newark Police Department comes into evidence; you understand that?
 Mr. Dye: Yeah. But I got one comment: It's not statements that I made. It's not a statement that I signed.
THE COURT: I couldn't hear you.
 MR. DYE: I says that isn't the statement I made, isn't the statement that I signed.
 THE COURT: Okay. But you understand the Court's still going to let that come in and the jury gets to hear the statement that the police said you made.
 MR. DYE: Well, that's why I wanted to set up a suppression hearing with a different attorney.
 THE COURT: You can't have one. It's already been decided. I've already rules against you, so that won't happen.
MR. DYE: I was going to have —
 THE COURT: You do have the right to appeal that after the case is over. In other words, you can say I was wrong, and your attorney can take it to the Court of Appeals, and then the Court of Appeals will make a determination, but that statement will come in and the jury will hear it. You understand that now?
MR. DYE: Yeah, I understand that, but I got a question.
THE COURT: You don't agree with it, I understand.
Mr. DYE: No, I don't
THE COURT: It's still going to come in.
MR. DYE: I highly disagree with it.
THE COURT: Does that clear this up for you now?
MR. DYE: Um-hmm. Transcript of Proceedings at 6 — 10.
The trial court, following its interview with appellant, found him competent to stand trial. In so holding, the trial court stated as follows:
 "THE COURT: The Court determines that the defendant obviously knows his name, his address, the fact that he is incarcerated. He can confer with counsel; understands the charge against him; knows why he's here; can converse with the Court with regard to the motion to suppress, something that happened quite some time ago; doesn't agree with the Court's decision; understands, in my opinion, my explanation that the statement will be coming in even though he doesn't want it to come into evidence, and the Court determines that he is capable of proceeding in this matter; understands the nature and objective of the proceedings and has the ability to assist counsel in his defense. Therefore, the court determines that he is competent to stand trial."
Transcript of Proceedings at 11.
Appellant's responses to the questions addressed to him indicate that he understood the nature of the proceedings against him. Since appellant's responses to the court's questions were reasonable and coherent, and since there was no indication that any mental illness or problem that he suffered rendered him incapable of assisting his counsel in his defense, we find that the trial court's denial of appellant's request for a second competency examination was not unreasonable arbitrary, or unconscionable since no need for a second evaluation was shown. See Bailey, supra. Since the trial court did not abuse its discretion in denying appellant's motion for a second competency evaluation, appellant's sole assignment of error is overruled.
The judgment of the Licking County Court of Common Pleas is affirmed.
By Edwards, J. Hoffman, P.J. and Farmer, J. concur