[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal by Willie Johnson from a decision of Judge Timothy P. McCormick that he was competent to enter no contest pleas. We affirm.
 {¶ 2} From the record we glean the following: Johnson, Michael Williams and another man were arrested in Cleveland during the early morning of April 3, 1999. Williams was charged with possession of slightly more than fifteen grams of crack cocaine, divided into about fifty separate packages, and Johnson was charged with misdemeanors under the city's "open container" laws.
 {¶ 3} During Williams' trial, Johnson testified that, when the three were arrested, he "claimed" the crack cocaine and, although the drugs were found in a brown paper bag far away from Williams, the police officers insisted on charging Williams with possession of the drugs because they did not like him. Williams was acquitted of the charges.
 {¶ 4} As a result of his in-court testimony in the Williams case, Johnson was charged with possession of the fifteen-plus grams of crack cocaine, a second degree felony; preparation of drugs for sale, a fourth degree felony; and perjury, a third degree felony. By the time these charges were brought in May of 2001, Johnson was serving an aggregate prison term of twenty-five years, in an unrelated case, after pleading guilty to two counts of aggravated robbery and one count of attempted murder, all with gun specifications.
 {¶ 5} Prior to trial on the instant case, Johnson raised the issue of his competency and the judge referred him to the Court Psychiatric Clinic for an evaluation of his competency and mental health. Dr. Michael Aronoff, the chief of psychology, after interviewing Johnson and giving him several diagnostic tests, determined his overall I.Q. to be fifty-five, which qualified him as mildly mentally retarded. He also noted that Johnson was mildly depressed, claimed to hear voices, and had poor short-term memory retention and abstract reasoning skills.
 {¶ 6} After questioning Johnson about the criminal justice system, his case, and the legal process, Dr. Aronoff came to the conclusion that Johnson did not have sufficient understanding of the roles of the judge, prosecutor, and his attorney; that he could not differentiate between a guilty or not guilty plea; and that he was unaware of the seriousness of the charges he faced in this case. He further noted that, on the standard CAST-MR competency test, Johnson performed far worse than other retarded defendants who had been determined to be incompetent. Accordingly, Dr. Aronoff recommended that Johnson be referred to a mental health facility to have his competency restored through education, and he opined that it was very probable that Johnson's competency could be restored in less than one year.
 {¶ 7} The assistant prosecutor, who had seen various pro se motions that Johnson had filed in his earlier attempted murder and aggravated robbery cases, confronted Dr. Aronoff regarding his conclusions and, convinced that Johnson was feigning mental illness and/or incompetency, moved the judge for a second competency and mental health evaluation. Dr. Aronoff recommended Dr. John Kenny, an expert in detecting malingering, to conduct this evaluation, and the judge granted the request.
 {¶ 8} In his written evaluation of Johnson, Dr. Kenny noted that at age eleven years, Johnson had taken an I.Q. test and achieved an overall score of seventy-four, indicative of borderline intellectual function. In the absence of an intervening severe brain injury, the nineteen point drop determined by Dr. Aronoff's testing could not be legitimately explained and, Dr. Kenny opined, may be indicative of Johnson feigning intellectual deficits. He further noted that Johnson's description of continuously hearing voices from outside his head, rather than intermittently hearing voices inside his head, was not consistent with the symptoms of someone suffering from a legitimate psychotic disorder. He concluded that Johnson's claimed mental illness also seemed feigned.
 {¶ 9} Dr. Kenny stressed that Johnson's test scores on his CAST-MR test for competency, and two other tests designed to test memory and the pretense of memory deficits, were much lower than either: 1., scores attributable to mere chance or, 2., scores typically registered by persons with severe brain damage. To Dr. Kenny, these results indicated that, far from not knowing the correct answers on these tests, it was probable that Johnson was deliberately choosing incorrect answers. It was Dr. Kenny's opinion that Johnson was faking both his legal incompetency to stand trial and his intellectual deficits.
 {¶ 10} Under R.C. 2945.371(B), the judge gave Johnson the opportunity to obtain an independent psychological and competency exam, which was performed by Dr. James Karpawich. In the course of that interview, Johnson reiterated his claims of seeing hallucinations and hearing voices, but added that, since the age of ten, he had seen and talked with a two-foot tall white-furred monkey named Benitez. In his report, Dr. Karpawich found it significant that, although Johnson exhibited almost complete ignorance of the criminal justice system and claimed he did not know the meaning of the word "prosecutor," in one instance he correctly identified the role of the prosecutor. Therefore, based on his analysis of the reports of Drs. Aronoff and Kenny, and his own interview, Dr. Karpawich opined that Johnson was faking both his incompetency and retardation, and was competent to stand trial. The judge, by journal entry, made this report part of the record, and was able to consider it in making his ruling.
 {¶ 11} After a hearing, during which Drs. Aronoff and Kenny testified, the judge issued an order finding Johnson competent to stand trial, and Johnson thereafter pleaded no contest to each of the charges. The judge found him guilty and sentenced him to two years prison on the possession charge, six months prison on the preparation for sale count, and one year prison on the perjury count. Each of these minimum sentences were run concurrent to one another and concurrent to the twenty-five year prison term Johnson was already serving.
 {¶ 12} In his sole assignment of error, Johnson contends he had demonstrated, by a preponderance of the evidence, that he was incompetent and it was error to accept his no contest pleas. We disagree.
"`It has long been recognized that "a person [who] lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."' * * * Fundamental principles of due process require that a criminal defendant who is legally incompetent may not be tried. * * * R.C. 2945.37([G]) requires a competency hearing if a request is made before trial."[1]
 {¶ 13} Under R.C. 2945.37(G), "A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial."[2]
 {¶ 14} Under constitutional due process principles, the standard for determining competency to stand trial is the same as the standard for determining competency to enter a guilty plea or a plea of no contest.[3]
The burden of establishing incompetence, however, is upon the defendant.[4] In reviewing a judge's determination of competency, we examine whether the conclusion was supported by competent, credible evidence.[5] The adequacy of the "data relied upon by the expert who examined the [defendant] is a question for the [judge]."[6]
Where there is a divergence of opinion among experts, the issue becomes a matter of credibility. Under such circumstances, "the weight to be given the evidence and the credibility of the witnesses are primarily for the [judge]."[7] Moreover, a judge's decision on competency will not be disturbed absent an abuse of discretion.
"Where the trial court refers the defendant for a psychiatric evaluation pursuant to a request by defendant's counsel, and the examining psychiatrist concludes that the defendant is fully capable of assisting in his own defense and of understanding the nature and facts of the charges against him, the psychiatrist's testimony to that effect, given at a hearing conducted pursuant to R.C. 2945.37, is sufficient to sustain the court's determination that the defendant is competent to stand trial. * * * Where, however, there has been a hearing on competency and expert testimony that the defendant's disruptive behavior is intentional and not the result of mental illness, the court does not err in proceeding, * * *"[8] or in considering competency established.
 {¶ 15} In this case, both Drs. Kenny and Karpawich found Johnson's claims of mental illness to be false and determined that he had intentionally depressed his diagnostic test scores to reflect artificially low levels of cognition and memory retention. While Dr. Aronoff, at hearing, questioned Dr. Kenny's diagnosis of definite malingering because he disagreed with some of the methodology used in reaching such a conclusion, he declined to offer an opinion on whether Johnson was a malingerer, and also acknowledged Dr. Kenny's expertise in this area. From the evidence presented, it is not at all clear that there was a preponderance of evidence that Johnson was incompetent. In fact, quite the opposite seems to be the case.
 {¶ 16} While Johnson claimed to be unaware of why he was charged with the crimes in the instant case, a review of his testimony in the Williams case confirms that he had a lucid memory and complete understanding of the events at issue and had testified in order to secure his friend's acquittal. His subsequent nescience of the facts underlying his charges or the significance of the indictments, given his criminal history, is highly suspect.
 {¶ 17} Expert testimony and reports indicated that Johnson was a malingerer and Dr. Aronoff's opinion was, at best equivocal. We find no abuse of discretion in the judge's determination that Johnson was competent to stand trial and, therefore, competent to enter pleas of no contest.
Judgment affirmed.
PATRICIA A. BLACKMON, P.J., And SEAN C. GALLAGHER, J., CONCUR.
[1] State v. Thomas, 97 Ohio St.3d 309, 315, 2002-Ohio-6624 (internal citations omitted).
[2] R.C. 2945.37(G), see Dusky v. United States (1960),362 U.S. 402.
[3] State v. Kovacek (May 30, 2001), Lorain App. No. 00CA007713, citingGodinez v. Moran (1993), 509 U.S. 389, 391, and State v. Bolin (1998),128 Ohio App.3d 58, 61-62.
[4] See State v. Williams (1986), 23 Ohio St.3d 16, 19, citing Statev. Chapin (1981), 67 Ohio St.2d 437; State v. Bailey (1992),90 Ohio App.3d 58, 67, appeal dismissed (1992), 68 Ohio St.3d 1212, Statev. Pruitt (1984), 18 Ohio App.3d 50, 59.
[5] State v. Hicks (1989) 43 Ohio St.3d 72, 79, State v. Williams
(1986), 23 Ohio St.3d 16, 19, State v. Stanley (1997), 121 Ohio App.3d 673,685-686.
[6] State v. Williams, supra.
[7] State v. DeHass (1967), 10 Ohio St.2d 230, syllabus.
[8] State v. Stone (Oct. 4, 1995), Lorain App. No. 94CA005986, citingState v. Marshall (1984), 15 Ohio App.3d 105, paragraphs one and three of the syllabus.