Opinion
Jeffery Hopson, defendant-appellant, appeals from his conviction and sentence in the Cuyahoga County Court of Common Pleas, Criminal Division, Case No. CR-344107, bf two counts of aggravated murder in violation of R.C. 2903.01, one count of aggravated robbery in violation of R.C. 2911.01 and one count of attempted aggravated arson in violation of RC. 2909.11 and R.C.2923.02. Defendant-appellant assigns four errors for this courts review.
Defendant-appellant's appeal is affirmed in part, reversed in part and remanded for re-sentencing.
This appeal arises out of the murder of James Lewis, defendant-appellant's stepfather, on October 17, 1996. At the time of the offenses, defendant-appellant was living with his mother and Mr. Lewis. Defendant-appellant and Mr. Lewis admittedly did not like each other and argued often. Apparently, after one particularly heated exchange, defendant-appellant struck Mr. Lewis with a hammer repeatedly resulting in Mr. Lewis death. Defendant-appellant then set Mr. Lewis body on fire and fled the state.
Defendant-appellant was arrested in Columbus, Indiana the next day. He was then extradited to Ohio. On October 21, 1996, the Cuyahoga County Grand Jury indicted defendant-appellant in a four-count indictment. The first and second counts of the indictment charged defendant-appellant with aggravated murder in violation of R.C. 2903.01. These counts were based upon the theories of prior calculation and design and felony murder for a single homicide. Each count included a death penalty specification pursuant to R.C. 2929.04(A)(7). The third count of the indictment charged defendant-appellant with aggravated robbery in violation of R.C. 2911.01. The fourth and final count of the indictment charged defendant-appellant with aggravated arson in violation of R.C. 2909.01. On November 14, 1996, defendant-appellant was arraigned, whereupon he entered a plea of not guilty to all four counts contained in the indictment.
On April 14, 1997, defendant-appellant waived his constitutional right to a trial by jury and chose to try his case to a three-judge panel. Trial commenced that same day.
The states case consisted of the testimony of eleven witnesses and related exhibits. The states first witness, Christin Rolf, Deputy County Coroner, testified that she is a licensed physician who has performed over 150 autopsies. Dr. Rolf performed the autopsy on Mr. Lewis after which she concluded that Mr. Lewis was dead prior to the fire which burned his entire body. Dr. Rolf determined that the cause of death was multiple skull fractures caused by a hard, blunt object. In her opinion, the damage done to Mr. Lewis head was consistent with damage done by a hammer. Dr. Rolf ruled the manner of death as a homicide.
The second witness for the state was Mary Ann May, a member of the Trace Evidence Department of the Cuyahoga County Coroner's Office. Ms. May examined two hammers recovered from the scene of the homicide and subsequent fire, one with a clawed end and one with a charred wooden handle. The hammer with the charred handle had blood on it which was DNA tested and determined to be consistent with the blood of the victim, Mr. Lewis. One thin gray hair was also discovered on this hammer which was also consistent with that of Mr. Lewis. The second hammer contained no samples. Ms. May also found human blood on defendant-appellant's Nike sport shorts that was consistent with that of Mr. Lewis.
The state's third witness, Paul Appleton, a firefighter and paramedic for the Cleveland Fire Department, testified that he answered a fire call at 12501 Wanda Avenue, Cleveland, Ohio on October 17, 1996. Appleton stated that, upon his arrival, he observed a working fire with heavy smoke. The fire originated and was contained within one bedroom of the house. After the fire had been extinguished, Mr. Lewis' body was discovered in the bedroom straddling a motorized cart. Mr. Lewis was handicapped due to a prior back condition.
The state's fourth witness, Dan Kovacic of the Cleveland Fire Department's Fire Investigation Unit, testified that he was called to investigate the fire at 12501 Wanda Avenue. Upon arrival, he was directed to the point of origin of the fire in the bedroom where the victim's body had been discovered. Lieutenant Kovacic ruled out any accidental causes for the fire. He also noticed a strong odor of lighter fluid in the room which was indicative of a fire that had been intentionally set.
Lieutenant Kovacic observed Mr. Lewis' body in the room. The victim's legs were partially propped up on a motorized cart. Almost all of the victim's clothing had been burned off his body by the accelerant which had actually been poured directly upon the victim's person. Kovacic also observed an open safe in an adjacent bathroom. The fire had not spread to the bathroom; consequently, the safe was undamaged.
The state's fifth witness, Kathy Denisoff of the Cleveland Police Department's Forensic Laboratory, testified that she received three items for testing from the Cleveland Fire Department. Each item tested positive for fuel oil number one, a class four accelerant. Ms. Denisoff also received three items from the Cuyahoga County Coroner's Office for testing. Two of the three additional items tested positive for fuel oil number one. This accelerant is consistent with kerosene.
The sixth witness for the state was Rodney Cowart who had been visiting his girlfriend's house on Wanda Avenue on the day of the fire. Mr. Cowart observed a man leaving the premises at 12501 Wanda Avenue in a red pick-up truck on the day of the fire. He identified the man as defendant-appellant. Moments after Mr. Cowart saw defendant-appellant leave the driveway, fire broke out at the home. Mr. Cowart then ran to his girlfriend's home and told her to call 911.
Frieda Johnson, Mr. Lewis' sister, was the next witness for the state. Ms. Johnson testified that her brother, who had been deaf since the age of five, had been married to Margaret Hopson. Ms. Johnson stated that during his life, her brother had worked hard and saved a lot of money. Mr. Lewis kept some of his money in the bank, some in a money belt that he carried on his person and some in the safe in his home. This fact was apparently common knowledge among members of the family.
The state's eighth witness was Jeffrey Null, a sales consultant for a local automobile dealership. Mr. Null sells cars and trucks. Mr. Null testified that after he learned of Mr. Lewis' death on the 10:00 p.m. news, he contacted the Cleveland police and informed the department that he had recently sold a red pick-up truck to Mr. Lewis. At the time of the sale, defendant-appellant was present, and acted as a translator for Mr. Lewis who was deaf.
The ninth witness for the state was Detective Michael Beaman of the Cleveland Police Department's Homicide Unit. Detective Beaman testified that he responded to a homicide at 12501 Wanda Avenue on October 17. 1996. An inspection of the bedroom where the fire occurred revealed that the dresser drawers in the bedroom were thrown about the room. These drawers contained clothes, papers and coins which were scattered throughout the room. Detective Beaman spoke with the victim's wife who appeared to be very upset throughout their conversation. Mrs. Lewis indicated that approximately $1,800 was missing from the bedroom and TVs and VCRs that had been in the home could not be located. As a result of the investigation, defendant-appellant was identified as a possible suspect and a warrant for aggravated murder was obtained. After learning that defendant-appellant had recently resided in Columbus, Indiana, the Cleveland police notified the authorities of that municipality that defendant-appellant was wanted in connection with the murder of Mr. Lewis. Defendant-appellant was arrested in Columbus, Indiana the next day.
The tenth witness for the state was Detective Fred Yentz of the Columbus, Indiana Police Department. Detective Yentz testified that he arrested defendant-appellant in Columbus, Indiana on October 18, 1996 after observing defendant-appellant drive by the scene of an accident in the red pick-up truck. After the detective informed defendant-appellant of his Miranda rights, defendant-appellant allegedly inquired as to the penalty for murder.
The state's eleventh witness was Lieutenant Mark Gorbett, of the Bartholomew County Sheriff's Department. Lieutenant Gorbett testified that he spoke with defendant-appellant after defendant-appellant had been taken into custody. Lieutenant Gorbett advised defendant-appellant of his Miranda rights and defendant-appellant executed a waiver of those rights. Defendant-appellant then confessed his involvement in the murder of Mr. James Lewis. Specifically, defendant-appellant admitted that he and Mr. Lewis had an argument, after which defendant-appellant smoked three rocks of crack cocaine. He then went to the kitchen where he obtained a hammer out of a tool drawer. Defendant-appellant proceeded to attack Mr. Lewis two separate times, killing him during the second attack.
Immediately after the attack, defendant-appellant proceeded to look through Mr. Lewis' bedroom for valuables and the keys to the red pick-up truck in which defendant-appellant eventually fled to Columbus, Indiana. Defendant-appellant allegedly told Lieutenant Gorbett that he also took some VCRs and TVs, which he later sold for money to purchase more crack cocaine. Defendant-appellant proceeded to pour kerosene all over Mr. Lewis' body and the bedroom. He then ignited the kerosene and left the house. Defendant-appellant's statement was recorded on audiotape and that tape was also transcribed. Both the audiotape and the corresponding transcript were introduced into evidence as states Exhibit 1 and 2, respectively.
The state concluded its case with a continuation of the testimony of Detective Michael Beaman. Detective Beaman, along with his partner, transported defendant-appellant from Columbus, Indiana to Cleveland, Ohio. During the course of the trip, defendant-appellant allegedly inquired as to the possible sentence involved for murder. At this point, defendant-appellant was informed of his Miranda rights once again. Defendant-appellant allegedly claimed he was on crack at the time of the murder. Detective Beaman testified that the police were unable to find the TVs, VCRs or the missing $1,800.
The state then rested its case. Defendant-appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied defendant-appellant's motion.
The defense case consisted solely of the testimony of defendant-appellant who stated that he had been in the Cleveland area approximately four months before the incident occurred. Defendant-appellant had left Columbus, Indiana due to ongoing problems with his girlfriend.
On the day of the killing, defendant-appellant went downtown with his mother early in the morning to cash his paycheck and go to the federal building. After cashing his paycheck, defendant-appellant gave his mother one-half. Ordinarily, defendant-appellant gave Mr. Lewis one-half for room and board.
Defendant-appellant and Mr. Lewis often fought verbally over defendant-appellant's sleeping habits, eating habits and the amount of rent defendant-appellant was paying. After defendant-appellant returned home on the day in question, an argument once again ensued between defendant-appellant and Mr. Lewis regarding room and board. Defendant-appellant maintained that Mr. Lewis made a number of threats toward defendant-appellant's mother during the argument.
Defendant-appellant then prepared some noodles for Mr. Lewis. After further argument about the manner in which the noodles were prepared, defendant-appellant went downstairs to smoke some crack cocaine and Mr. Lewis drove his motorized cart into his bedroom. At this point, defendant-appellant testified that he became so upset that he went into the kitchen tool drawer and pulled out a hammer. Defendant-appellant proceeded into Mr. Lewis' bedroom and engaged in two separate attacks on Mr. Lewis. The second attack resulted in Mr. Lewis' death. Defendant-appellant then went through the room looking for valuables and the keys to the red pick-up truck in which he eventually fled to Indiana.
Defendant-appellant testified further that, at this point, he became ashamed of what he had done. He then went to the garage, brought back kerosene and poured it directly on the body of Mr. Lewis and around the bedroom itself. Defendant-appellant ignited the kerosene and left the house with the items he had taken. Defendant-appellant maintained that he then sold the items on the eastside of Cleveland and purchased crack cocaine with the proceeds.
After defendant-appellant's testimony, the defense renewed its Crim.R. 29 motion for judgment of acquittal. The trial court once again denied the motion.
After closing arguments, the three-judge panel found defendant-appellant guilty of all counts, including an amended count four of attempted aggravated arson. The penalty phase of the proceedings commenced on June 5, 1998. The three-judge panel concluded that the aggravating circumstances did not outweigh the mitigating factors and defendant-appellant did not receive the death penalty. Defendant-appellant was sentenced to life in prison without parole on counts one and two of the indictment. On count three, defendant-appellant was sentenced to ten years. On the amended count four, defendant-appellant was sentenced to an eight year term of incarceration. All sentences were ordered to be served consecutively.
Defendant-appellant now appeals from the judgment of the trial court.
Defendant-appellant's first assignment of error states:
 I. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE ELEMENT OF PRIOR CALCULATION AND DESIGN PURSUANT TO R.C. 2929.04(A)(7).
Defendant-appellant argues, through his first assignment of error, that the evidence in this case is insufficient to prove that he killed Mr. Lewis with prior calculation and design. Specifically, defendant-appellant maintains that the attack on Mr. Lewis was not planned in any way, but was the result of a heated argument between two individuals who did not get along. It is defendant-appellant's position that he had not "designed" to kill Mr. Lewis prior to entering the bedroom and, therefore, count one of the indictment should be reduced from capital murder to murder pursuant to R.C. 2903.02.
In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.
 State v. Jenks, supra, paragraph two of the syllabus.
More recently, in State v. Thompkins (1977), 78 Ohio St.3d 380,386, the Ohio State Supreme Court stated the following with regard to the "sufficiency" as opposed to the "manifest weight" of the evidence:
 With respect to sufficiency of the evidence, "sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain the conviction). In essence, sufficient is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
A judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case.Cohen v. Lamko (1984), 10 Ohio St.3d 167. Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass (1967),10 Ohio St.2d 230.
The essential elements of the offense of aggravated murder pursuant to R.C. 2903.01 are that a person (1)purposefully, (2) with prior calculation and design, (3) causes the death of another. Defendant-appellant contends that the essential element of prior calculation and design was not proven beyond a reasonable doubt. While the statute does not define prior calculation and design, numerous courts have established the requisite proof necessary to prove prior calculation and design beyond a reasonable doubt. In State v. Cotton (1978), 56 Ohio St.2d 8,381 N.E.2d 190 at paragraph three of the syllabus, the Ohio Supreme Court held: "where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated design to kill, a finding by the trier of fact of prior calculation and design is justified." It is not required that a prolonged thought process be demonstrated. Statev. Johnson (Dec. 3, 1998), Cuyahoga App. No. 72541, unreported. Even when a defendant only has instants to design the death of the victim, it will be sufficient. State v. Bailey (1992),90 Ohio App.3d 58. 73, 627 N.E.2d 1078. In State v. Taylor (1997),78 Ohio St.3d 15, 18-20, 676 N.E.2d 82, the Ohio Supreme Court reviewed the meaning of the term prior calculation and design. The Court determined that, based upon a review of Ohio case law dealing with the issue, it is not possible to formulate a bright-line test that emphatically distinguishes between the presence or absence of prior calculation and design. Each case turns upon the particular facts and evidence presented at trial.State v. Johnson, supra.
In State V. Jenkins (1976), 48 Ohio App.2d 102, the appellate court considered three factors in determining whether prior calculation and design exists: (1) Did the accused and the victim know each other and, if so, was that relationship strained? (2) Did the accused give thought or preparation to choosing the murder weapon or the murder site? (3) Was the act drawn out or "an almost instantaneous eruption of events?" See, also, State v.Taylor, supra, at 20, 676 N.E.2d 82.
At trial, evidence was presented by the state to demonstrate that not only did defendant-appellant know the victim, but he resided in the victim's home for a number of months before the murder. On the day in question, defendant-appellant and Mr. Lewis argued but the argument ended, by defendant-appellant's own admission, when he went downstairs to smoke crack cocaine. After finishing the crack, defendant-appellant voluntarily returned to the kitchen, chose a weapon, the hammer, which would do considerable damage to Mr. Lewis' skull and entered Mr. Lewis' bedroom through a closed bedroom door and began the attack while Mr. Lewis was still sitting in his motorized cart and unable to defend himself.
Consequently, upon review of the facts and circumstances surrounding the death of Mr. Lewis, it is apparent that the evidence presented reveals the presence of sufficient time and opportunity for defendant-appellant to have planned the murder and the circumstances surrounding the murder are sufficient to show a scheme designed to implement the ultimate decision to end the life of the victim. Therefore, the evidence presented by the state was sufficient to prove, beyond a reasonable doubt, the element of prior calculation and design as set forth in R.C.2903.01.
For the foregoing reasons, defendant-appellant's first assignment of error is not well taken.
Defendant-appellant's second assignment of error states:
 II. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN A CONVICTION OF AGGRAVATED ROBBERY PURSUANT TO R.C. 2911.01.
Defendant-appellant maintains that the state failed to prove that a theft offense occurred during the murder of Mr. Lewis. Specifically, defendant-appellant argues that the state failed to establish that any money was missing from the residence or that the TVs and VCRs referred to during the testimony of Lieutenant Gorbett and Detective Beaman were actually stolen. It is defendant-appellant's contention that, since the state failed to prove the existence of a theft offense beyond a reasonable doubt and theft is one of the essential elements of aggravated robbery, defendant-appellant could not, therefore, be convicted of aggravated robbery.
R.C. 2911.01(A), Ohio's aggravated robbery statute, provides in pertinent part:
 No person, in attempting or attempting to committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt of offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
* * *
 (3) Inflict or attempt to inflict serious physical harm on another.
Theft is defined in R.C. 2913.01 as follows:
 No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent.
As this court previously stated in its disposition of defendant-appellant's first assignment of error;
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
State v. Jenks, supra, at paragraph two of the syllabus; State v.Thompkins, supra; State v. Moody (July 15, 1998), Lorain App. No. 97CA006711, unreported.
In the case sub judice, defendant-appellant maintains that the only evidence admitted at trial to prove the essential element of theft as part of the alleged aggravated robbery was the hearsay testimony of Detective Beaman who maintained that Mrs. Lewis had told him of missing money, TVs and VCRs. It is defendant-appellant's position that a hearsay statement alone cannot establish beyond a reasonable doubt that a theft offense occurred. However, a review of the record from the trial court fails to support defendant-appellant's assertion. Initially, it is apparent from Lieutenant Gorbett's testimony that, at the very least, defendant-appellant attempted to commit a theft offense. According to Lieutenant Gorbett's testimony, defendant-appellant admitted that after he struck Mr. Lewis in the head with the hammer for the first time, defendant-appellant searched through the bedroom for money and the keys to Mr. Lewis' pick-up truck. After defendant-appellant noticed that Mr. Lewis was still breathing, he struck him again repeatedly until Mr. Lewis died. Clearly, during this sequence of events, evidence was presented upon which any reasonable trier of fact could have found that an attempted theft occurred.
In addition, viewing the evidence presented in a light most favorable to the prosecution, it is apparent from the testimony of Detective Beaman as well as the testimony of defendant-appellant himself that an actual theft did, in fact, occur. Detective Beaman testified that he spoke with Mrs. Lewis soon after the fire and she indicated that there should have been $1,800 in the bedroom and TVs and VCRs throughout the house. The money and the TVs and VCRs could not be found. Defendant-appellant himself admitted that he left the home with two VCR and a TV that did not belong to him. In addition, defendant-appellant fled Cleveland in Mr. Lewis' pickup truck. Clearly, the essential element of theft was sufficiently established by the state to enable the finder of fact to determine beyond a reasonable doubt that defendant-appellant did commit aggravated robbery as charged in count three of the indictment.
For the foregoing reasons, defendant-appellant's second assignment of error is not well taken.
Defendant-appellant's third assignment of error states:
 III. THE APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF TRIAL COUNSEL DURING THE GUILT-INNOCENCE DETERMINATION PHASE OF TRIAL.
Defendant-appellant argues, through his third assignment of error, that defense counsel's failure to object to the allegedly inadmissable hearsay testimony of Detective Beaman regarding the theft of money, TVs and VCRs from the house constituted a denial of effective assistance of counsel as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution. It is defendant-appellant's position that, without the disputed testimony, the state could not have established the underlying theft as an essential element of aggravated robbery.
In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984),466 U.S. 668, State v. Brooks (1986), 25 Ohio St.3d 144.
In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith
(1985), 17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley
(1989), 42 Ohio St.3d 136, that:
 "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391, 396
397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668. * * *
 Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365
(1981)." Strickland, supra, at 691. To warrant reversal, ""[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *
 Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
State v. Bradley, supra, at 141, 142.
In this instance, a review of the alleged statements of Mrs. Lewis regarding the stolen property demonstrates that the trial court properly admitted Mrs. Lewis' statements into evidence as an excited utterance exception to the hearsay rule. Evid.R. 803(2) provides:
 (2) Excited Utterance. A statement relating to a startling event or condition while the declarant was under the stress of excitement caused by a startling event or condition.
To be admitted as an excited utterance exception, the statement at issue must be made while the declarant is still under the stress of the underlying event, and may not be the result of the declarant's reflective thought. State v. Taylor (1993), 66 Ohio St.3d 295,612 N.E.2d 316; State v. Johnson (Nov. 19, 1998), Richland App. No. 98-CA-42, unreported. The record reflects that Mrs. Lewis' statements were made while she was still under the stress of the murder of her husband and the fire at her home. Detective Beaman testified as follows:
 Q. During the time that you came out the second time, what was her demeanor, did it remain to be upset, and crying, tearful?
A. Yes.
 Q. Would you describe her to continue to be in a hysterical state?
A. Yes.
(T. at 234)
Therefore, since defendant-appellant has failed to show that any objection to the testimony of Detective Beaman would have been sustained, this court cannot now say that trial counsel was ineffective for failing to voice such an objection on the record. Accordingly, defendant-appellant has not demonstrated that the outcome of the trial would have been different had defense counsel objected to the statements of Mrs. Lewis. Defendant-appellant was not deprived of the constitutional right to effective assistance of counsel.
Defendant-appellant's third assignment of error is not well taken.
Defendant-appellant's fourth and final assignment of error states:
 IV. THE TRIAL COURT ERRED BY ORDERING TWO CONVICTIONS THAT ARE ALLIED OFFENSES PURSUANT TO R.C. 2941.25 TO BE SERVED CONCURRENTLY.
In his final assignment of error, defendant-appellant maintains that the trial court erred in sentencing. Specifically, defendant-appellant maintains that he was convicted of two separate theories of aggravated murder; i.e., prior calculation and design and felony murder. At sentencing, the trial court found the convictions to be merged, but ordered the two sentences to be served consecutively. It is defendant-appellants position that the trial court should have ordered only one life sentence to be served on the merged aggravated murder offenses.
A review of the record demonstrates that defendant-appellant's fourth assignment of error has merit. While the trial court properly merged the underlying aggravated murder convictions, it improperly sentenced defendant-appellant to two consecutive life sentences on the merged offense. See State v. Huertas (1990),51 Ohio St.3d 22, 28, State v. Hawkins (1993), 66 Ohio St.3d 339,346, State v. Pless (May 21, 1998), Cuyahoga App. No. 72281, unreported. Accordingly, this court finds that the case be remanded and the trial court impose a single life sentence for the aggravated murder offense.
Defendant-appellant's fourth and final assignment of error is well taken.
Judgment of the trial court is affirmed in part, reversed in part and remanded for re-sentencing consistent with this opinion.
This cause is affirmed in part, reversed in part and remanded for re-sentencing for proceedings consistent with this opinion.
Costs to be divided equally between plaintiff-appellee and defendant-appellant.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, JUDGE.
PATTON. P.J., and
ROCCO. J., CONCUR.