JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Rozzonda Ivey appeals her convictions on two counts of felonious assault, R.C. 2903.11 with an accompanying three-year firearm specification. Defendant also appeals her conviction for improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161.[1] For the reasons that follow, defendant's convictions are affirmed.
 {¶ 2} The events leading to this appeal involve gunshots fired into the home of Fillicia McWilliams in the early morning hours of August 18, 2001. At trial, McWilliams testified that just prior to the 18th, she and defendant had lived together at her home at 5019 E. 114th St., Garfield Hts., Ohio. Tr. 167-170. Some time before the 18th of August, McWilliams asked defendant to leave the premises and find housing elsewhere. Defendant became upset, but did vacate the premises.
 {¶ 3} After she moved, defendant learned that McWilliams was dating John Avery. McWilliams stated on one occasion, one or two days before the 18th, defendant came to get her mail and threatened "to shoot my house because she wasn't going to see me with anybody." Tr. 173-174, 183-184. McWilliams stated she made a complaint about this threat the same day it occurred. Tr. 175-76. She also testified that defendant "had two guns." Tr. 177.
 {¶ 4} On the morning of August 18, 2001, McWilliams stated that she and Avery were asleep when the telephone rang sometime between 6:10 a.m. and 6:15 a.m. McWilliams testified it was "a little after [defendant] got off work." Tr. 171-172. McWilliams said she answered the phone and spoke to defendant. According to McWilliams, as soon as the call ended, she called 911 and told police that defendant had called and "threatened to come over to shoot my house up." Tr. 177-76.
 {¶ 5} McWilliams described what happened next, less than twenty-minutes after she hung up with defendant on the morning of the 18th: "I was standing right by my bed, * * * and something just came across me * * * the bullets started flying through my window." Tr. 176. Police were called and when they arrived McWilliams identified defendant as the shooter. McWilliams testified that prior to the shooting incident she had made a total of sixteen complaints about defendant. Tr. 178.
 {¶ 6} John Avery testified that he, not McWilliams, answered the phone on the 18th. He handed the phone to McWilliams and then heard her arguing with the caller, whom he could not identify. Avery fell back asleep, only to awake to McWilliams' excitement about the gunshots. Like McWilliams, Avery did not see who shot into the house on the 18th. The day before the shooting, however, Avery saw defendant parked down the street just sitting there watching the house. Tr. 203. Avery stated that he had also heard defendant threaten McWilliams before the shooting and specifically say she was "going to shoot this house up * * *." Tr. 198-204.
 {¶ 7} Detective Mazzola, a police officer for the City of Garfield Hts., testified that he was the responding officer on August 18, 2001 and that he got the call around 7:00 a.m. Tr. 211. Mazzola stated that he saw evidence of bullets having been shot into McWilliams' house but that he could not tell what kind of gun had been used. Tr. 221. None of the bullet fragments was sent for ballistics examination and no gun was recovered. Tr. 225-226. Mazzola explained he went to defendant's house the morning of the shooting but found no one there. Tr. 218.
 {¶ 8} Defendant called her brother, Calvin Harris, as a witness. Harris testified that defendant and her children were living with him, his wife, and their children in August 2001. Tr. 241. On the morning of the 18th, Harris stated he awoke between 6:30 a.m. and 7:00 a.m.; at that time — the time of the shooting — defendant was asleep and her car was in the driveway. Tr. 241-242, 244, 247. According to Harris, defendant left for Dayton, Ohio around 9:30 a.m. the morning of the shooting.
 {¶ 9} At trial, defendant moved for a judgment of acquittal, both at the end of the state's case and at the conclusion of her case. The court denied both motions and sent the case to the jury for deliberation. The jury convicted defendant on two counts of felonious assault relating to both victims, McWilliams and Avery, and one count of improperly discharging a firearm into a habitation.
 {¶ 10} The trial court sentenced defendant to six-year terms on each count of felonious assault, to be served consecutively. Defendant was also sentenced to three years on the firearm specification to be served consecutive to the twelve years. In all, defendant was sentenced to fifteen years.
 {¶ 11} Because defendant's first and second assignments of error are related to the sufficiency of the evidence presented against her at trial, they will be addressed together.
 First Assignment of Error {¶ 12} The trial court erred in denying appellant's motion for acquittal as to the charges of felonious assault with a firearm specification and improper discharge of a firearm into a habitation with a firearm specification when the state failed to present sufficient evidence of the elements of those offenses.
 Second Assignment of Error {¶ 13} Appellant's convictions are against the manifest weight of the evidence."
 {¶ 14} First, defendant claims the trial court erred in denying her Crim.R. 29(A) motions for judgment of acquittal on the charges of felonious assault and the accompanying firearm specification. We disagree.
 {¶ 15} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal if the evidence is insufficient to sustain a conviction.Pursuant to Crim.R. 29, a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. A Crim.R. 29(A) motion for acquittal "should be granted only where reasonable minds could not fail to find reasonable doubt." State v. Apanovitch (1987),33 Ohio St.3d 19, 23, 514 N.E.2d 394; State v. Jordan, Cuyahoga App. Nos. 79469 and 79470,
 {¶ 16} 2002-Ohio-590;. The standard for a Rule 29 motion is virtually identical to that employed in testing the sufficiency of the evidence.
 {¶ 17} In State v. Thomas, Cuyahoga App. No. 79565, 2002-Ohio-1085 this court set forth the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."Thomas, supra, citing State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492.
 {¶ 18} "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486,124 N.E.2d 148. "A judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent, credible evidence which goes to all the essential elements of the case." Thomas, supra citing Cohen v. Lamko (1984), 10 Ohio St.3d 167, 462 N.E.2d 407. If there is substantial evidence in support of a verdict, an appellate court may not substitute its judgment for that of the jury as to weight and sufficiency. Thomas, supra.
 {¶ 19} Defendant also argues that her convictions are against the manifest weight of the evidence. On appeal, this issue goes beyond the mere legal sufficiency of the evidence because we must consider the actual weight of the evidence.
 {¶ 20} "In State v. Nields (2001), 93 Ohio St.3d 6, 752 N.E.2d 859, the court held that, as to the manifest weight of the evidence, the issue is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." State v. Getsy (1998), 84 Ohio St.3d 180, 193-194,702 N.E.2d 866, citing State v. Eley (1978), 56 Ohio St.2d 169, 10 Ohio Op.3d 340, 383 N.E.2d 132, syllabus. In [State v.] Thompkins, [(1997),78 Ohio St.3d 380], the court illuminated its test for manifest weight of the evidence by citing to Black's Law Dictionary (6 Ed. 1990) at 1594, "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'"" State v. Poole, Cuyahoga App. No. 80150, 2002-Ohio-5065 ¶ 25; See State v. Brooks (1989), 44 Ohio St.3d 185.
 {¶ 21} In the case at bar, the state was required to prove each and every element of felonious assault as defined in R.C. 2903.11 and R.C. 2923.161, which sets forth the elements for the offense of improperly discharging a firearm into a habitation, which offense also carried a firearm specification.
 {¶ 22} R.C. 2903.11, felonious assault, provides in pertinent part as follows:
 {¶ 23} "(A) No person shall knowingly: (1) Cause serious physical harm to another * * *; (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon * * *, as defined in section2923.11 of the Revised Code."
 {¶ 24} R.C. 2901.22(B) defines "knowingly" as:
 {¶ 25} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."
 {¶ 26} "Deadly weapon" is defined in R.C. 2923.11(A) as follows: "Deadly weapon means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 27} R.C. 2923.161 specifies,
 {¶ 28} "(A) No person, without privilege to do so, shall knowingly * * *: (1) Discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual * * *."
 {¶ 29} When a firearm specification accompanies a charge of felonious assault, there must be a finding that defendant had a firearm on or about his person or under his control while committing the underlying offense. See R.C. 2941.145(A).
 {¶ 30} Viewing the evidence in a light most favorable to the prosecution, we conclude that there was sufficient evidence for the jury to find that defendant committed the offenses for which she was convicted. The evidence connecting defendant to the shooting incident is primarily McWilliams' testimony. McWilliams stated defendant owned two guns. On the morning of the shooting, McWilliams testified she and defendant quarreled on the phone and that as soon as the call ended, she called 911 and told police defendant "threatened to come over to shoot my house up." Not twenty-minutes later, bullets were shot into McWilliams' home. Avery also stated that the day before the shooting he saw defendant watching the house and had also heard defendant threaten she was "going to shoot this house up * * *."
 {¶ 31} From this same evidence we conclude the defendant committed "overt acts * * * which convincingly demonstrate a firm purpose to commit a crime," namely felonious assault against McWilliams and Avery, with a deadly weapon. Brooks, at 191.
 {¶ 32} The state also proved the elements necessary to convict defendant of having a deadly weapon/firearm. Under R.C. 2929.71(A), the trial court must impose an additional term of three years to a sentence if a defendant is convicted of any felony, other than a violation of R.C. 2923.12, and had possession of a "firearm" while committing the offense. The term "firearm" is then defined in R.C. 2923.11(B) as any deadly weapon capable of propelling or expelling a projectile.
 {¶ 33} "In interpreting R.C. 2923.11(B), the Supreme Court has expressly held that the state's burden as to operability can be met through circumstantial evidence: "Admission into evidence of the firearm allegedly employed in the crime is not necessary to establish the specification. Rather, the fact may be established by circumstantial evidence (testimony as to gunshots, smell of gunpowder, bullets or bullet holes, etc.). Nevertheless, there must be some evidence relative to the gun's operability."" State v. Bailey (1992), 90 Ohio App.3d 58, 80,627 N.E.2d 1078, quoting State v. Gaines (1989), 46 Ohio St.3d 65, 69,545 N.E.2d 68, 71-72.
 {¶ 34} Even though a firearm matching the bullets found in McWilliams' home was not found, both McWilliams and Avery testified about hearing gunshots and experiencing a spray of bullets flying through the house. As a result of this evidence and the actual bullets lodged in the house, we conclude there was sufficient circumstantial evidence proving that an operable firearm was used.
 {¶ 35} Accordingly, there is substantial evidence upon which the jury could reasonably conclude that all the elements of the crimes charged against defendant were proved beyond a reasonable doubt. Defendant's first and second assignments of error are overruled.
 Assignment of Error III {¶ 36} The trial court erred when it admitted other acts testimony in violation of R.C. 2945.59 and Evid.R. 404(B) and appellant's rights under Article I, Section 16 of the Ohio Constitution and theFourteenth Amendment to the United States Constitution.
 Assignment of Error No. IV {¶ 37} Appellant was denied effective assistance of counsel as guaranteed by Section 10, Article 1, of the Ohio Constitution and theSixth and Fourteenth Amendments to the United States Constitution when counsel failed to object to other acts evidence and failed to properly argue the motion for acquittal."
 {¶ 38} Defendant claims the state used "other incidents and an alleged threat to prove that [she] allegedly shot into Ms. McWilliams' house." She also argues ineffective counsel at trial because her attorney did not object to this evidence. An appellant bears the burden of showing error by reference to matters in the record. Errors not exemplified in the record will be disregarded, and the regularity of the proceedings below must, therefore, be presumed. App.R. 12(A)(2); State v. Baston,85 Ohio St.3d 418, 1999-Ohio-280, 709 N.E.2d 128.
 {¶ 39} In the case at bar, defendant fails to specify which "incidents" or "threat" she is referring to as "other acts" or which ones her counsel should have objected to at trial. Thus defendant has failed to comply with App.R.16(A). "It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error. State v. McGuire, 1996 Ohio App. Lexis 1492 *40, * * * affirmed (1997), 80 Ohio St.3d 390," cited in State v. Watson,126 Ohio App.3d 316, 321. See also App.R.12(A).
 {¶ 40} Next, defendant claims her trial counsel was ineffective in arguing for her acquittal. Ineffective assistance claims are evaluated in a two-step process. First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Statev. Poole, Cuyahoga App. No. 80150, 2002-Ohio-5065; Strickland v.Washington (1984), 466 U.S. 668, 688, 80 L.Ed.2d 674, 104 S.Ct. 2052. Second, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. Moreover, it is presumed that licensed attorneys are competent and that the challenged action is the product of sound trial strategy. Id; State v. Hamblin (1988),37 Ohio St.3d 153, 524 N.E.2d 476. A reviewing court must evaluate trial counsel's performance on the facts of the particular case as of the time of counsel's conduct. Poole, supra.
 {¶ 41} In this assignment of error, defendant specified only the arguments set forth in the first Assignment of Error. Regarding that assignment, we concluded, however, there was sufficient evidence to sustain her convictions. Thus we cannot fault the attorney regarding his motion for acquittal, because defendant has not demonstrated that the evidence was insufficient. For the foregoing reasons, we overrule defendant's third and fourth assignments of error.
 Assignment of Error No. V {¶ 42} The trial court erred when it sentenced appellant to consecutive sentences without making the appropriate findings required by R.C. 2929.14."
 {¶ 43} Defendant argues the court did not comply with the statutory requirements for consecutive sentences.
 {¶ 44} Pursuant to R.C. 2929.19(B)(2)(c), if a trial court imposes consecutive sentences, it must make certain findings on the record and give the reasons for imposing consecutive sentences. State v. Duvall,
Cuyahoga App. No. 80316, 2002-Ohio-4574. Pursuant to R.C. 2929.14(E), the trial court may impose consecutive prison terms for convictions of multiple offenses upon the making of the following findings enumerated in the statute:
 {¶ 45} "(E)(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 46} (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing * * * or was under post-release control for a prior offense.
 {¶ 47} (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 48} (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 49} In imposing consecutive sentences, the trial court does not need to use the exact words of the statute; however, it must be clear from the record that it made the required findings. Duvall, supra.
 {¶ 50} A review of the transcript shows that the trial court made the required findings before it imposed consecutive sentences upon defendant. The court stated:
 {¶ 51} "[B]ecause you seem to want to do this in the future and an inability to understand you've done anything wrong and you have a past violent history as well as a past history of problems with drug abuse and that, of course, could impede your judgment and maybe let your defenses down if you were going to try to control your behavior, the danger that you pose to the public is very severe.
 {¶ 52} So, therefore, the terms are not disproportionate to the seriousness of the offender's conduct and the danger that you, as the offender, pose to the public.
 {¶ 53} In addition to that, the harm caused was so great because we do have two individuals and each individual's life has their own inherent value. No single prison term could adequately reflect the seriousness of this conduct.
 {¶ 54} In addition to that, your history or the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by this offender.
 {¶ 55} You have a past violent offense, you have past prison terms, you have a past criminal history and there are several facts in this trial that have been indicated before this Court that demonstrate that you do have a propensity to commit this kind of violence again."
 {¶ 56} As required by the statute, the court found consecutive sentences were "not disproportionate to the seriousness of [defendant's] conduct." The court also found the sentence necessary "to protect the public from future crime" because defendant had a violent criminal history and had served past prison terms. Accordingly, the trial court did not err in imposing consecutive sentences. This assignment of error is overruled.
 Assignment of Error No. V {¶ 57} The trial court erred by ordering convictions for separate counts of felonious assault to be served consecutively because the offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.14."
 {¶ 58} Next, we address defendant's claim that she should not have received two separate convictions or sentences for felonious assault.
 {¶ 59} R.C. 2941.25(B) states that when a defendant's conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment may contain counts for all such offenses, and the defendant may be convicted of all of them. This court has held that felonious assault is a crime defined in terms of conduct towards another and that when there are two victims there is a dissimilar import for each person and therefore the two charges of felonious assault are not allied offenses of similar import. State v. Poole, supra.
 {¶ 60} As this court explained in Poole, supra:
 {¶ 61} "[E]ven where the crime is a part of a single course of conduct but there are two distinct victims, a separate animus may exist for each offense. * * * State v. Bonham (April 6, 1992), Clermont App. No. CA91-08-058, (consecutive sentences for felonious assault were appropriate where evidence showed that defendant shot at a motor vehicle while aware that it had two occupants); and State v. Lee (Sept. 3, 1998), Franklin App. No. 97 APA12-1629, (three consecutive terms for felonious assault were appropriate where defendant fired into a bedroom knowing that there were three people inside)." Poole, supra, citing Statev. Dubose, Mahoning App. No. 00-C.A.-60, 2002-Ohio-3029.
 {¶ 62} In the case at bar, the evidence shows that defendant knew that McWilliams and Avery were in the house on the morning of August 18, 2001. Both McWilliams and Avery testified that when defendant telephoned twice on the morning of August 18th, each of them had separately answered the phone; thus defendant knew they were both at home. Accordingly, the trial court did not err in sentencing defendant to separate terms of imprisonment for the felonious assault upon both McWilliams and Avery. We, therefore, overrule this assignment of error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, P.J., concurs in judgment only; JAMES J. SWEENEY,J., concurs.
[1] Defendant was originally indicted on four counts of felonious assault with each count carrying a three-year firearm specification. Count five of the indictment is the improper discharge of a firearm into a habitation. Defendant was convicted on counts one, three, and five. The jury acquitted defendant on the charges specified in counts two and four.