JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Michael Shurn appeals his conviction and sentence. Shurn assigns the following errors for our review:
 "I. The trial court erred by determining whether appellant was competent to stand trial after defense counsel informed the court prior to opening statement of appellant's impaired behavior."
 "II. The trial court erred in denying appellant's motion for acquittal as to the charge of burglary when the state failed to present sufficient evidence to sustain a conviction."
 "III. Appellant's conviction is against the manifest weight of the evidence."
 {¶ 2} Having reviewed the record and pertinent law, we affirm Shurn's conviction and sentence.
 {¶ 3} On February 21, 2007, the Cuyahoga County Grand Jury indicted Shurn on one count of burglary and two counts of disseminating obscene matter to juveniles. Shurn pleaded not guilty at his arraignment and on October, 15, 2007, a jury trial commenced.
 Jury Trial {¶ 4} The facts are not in dispute.[1] The State presented the testimony of five witnesses who established that on February 8, 2007, Kelly Mabrey was at home in Cleveland, Ohio with her four-year old daughter and was babysitting two other *Page 4 
children, ages three and four. Mabrey's mother, Paula Mabrey, was also at home, but asleep.
 {¶ 5} At approximately 4:00 p.m., Shurn entered Mabrey's home by pushing open the side door of the house. Mabrey began screaming and unsuccessfully tried to prevent Shurn from entering the home. Shurn entered the house completely naked and began masturbating in front of Mabrey and the three children.
 {¶ 6} Mabrey asked Shurn to leave, but he refused. Mabrey reached for the phone and dialed the police. Shurn proceeded to sit on a couch and continued to masturbate. Paula, who was awakened by Mabrey's screaming, took the children into another room.
 {¶ 7} When the police arrived, they found Shurn sitting on the couch, under a comforter, naked, and masturbating. The police also observed that the side door had been kicked open. In addition, the police suspected that Shurn was under the influence of PCP, a drug of abuse.
 {¶ 8} On October 17, 2007, the jury found Shurn guilty of all counts. On December 17, 2007, the trial court sentenced Shurn to prison terms of two years for burglary, and eighteen months each for the remaining two charges. The trial court ordered Shurn to serve concurrent sentences.
 Competency to Stand Trial {¶ 9} In the first assigned error, Shurn argues that the trial court erred in not determining whether he was competent to stand trial. We disagree. *Page 5 
 {¶ 10} As the Ohio Supreme Court has observed, "fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial."[2] The test employed to determine if a criminal defendant is, in fact, competent to stand trial was articulated in Dusky v. United States[3]
 "The test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him."[4]
 {¶ 11} It has long been recognized that a person who lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.[5]
 {¶ 12} Under constitutional due process principles, the standard for determining competency to stand trial is the same as the standard for determining competency to enter a guilty plea or a plea of no contest.[6] The burden of establishing incompetence, however, is upon the defendant.[7] *Page 6 
 {¶ 13} In reviewing a judge's determination of competency, we examine whether the conclusion was supported by competent, credible evidence.[8] The adequacy of the data relied upon by the expert who examined the defendant is a question for the judge.[9] Where there is a divergence of opinion among experts, the issue becomes a matter of credibility. Under such circumstances, the weight to be given the evidence and the credibility of the witnesses are primarily for the judge.[10] Moreover, a judge's decision on competency will not be disturbed absent an abuse of discretion.
 {¶ 14} In the instant case, prior to opening statements defense counsel indicated to the trial court that during voir dire, Shurn gave her a note, which caused her to have doubts about Shurn's competency to stand trial. The note read in pertinent part as follows:
 "Is it any kind of way that you can ask No. 4, do he own a red truck. The reason for asking is on the day of the crime, he was on the side of the police car, acting like he was 18-wheeler driver, honking the horn."[11] *Page 7 
 {¶ 15} After defense counsel raised the issue of competency, the trial court stated the following:
 "I will note for the record that the defendant was evaluated for competency to stand trial back in March 22, 2007, and the Court Psychiatric Clinic did note at that time, diagnosis of poly-substance dependence, and also schizophrenia, undifferentiated, and diagnosis code 295.90, but despite that, the Court Psychiatric Clinic did conclude that to a reasonable degree of psychological certainty, defendant is presently capable of understanding the objectives of the proceedings against him, and that he is capable of assisting counsel in his defense. Also on that same date, March 22, 2007, the Court Psychiatric Clinic did evaluate Mr. Shurn for sanity, and did conclude at that time, again, with reasonable psychological certainty, the defendant did not have a severe mental disease or defect that prevented him from knowing the wrongfulness of his alleged acts, and further, that at the time of the alleged offense, February 8, 2007, the defendant had a severe mental disease that did not prevent him from knowing the wrongfulness of his alleged acts."[12]
 {¶ 16} Shurn now argues that the trial court should not have proceeded with the trial. We are not persuaded.
 {¶ 17} Here, the record indicates that seven months prior to trial, Shurn had been evaluated and found capable of understanding the objectives and proceedings against him. In addition, the evaluation determined that Shurn did not have a severe mental disease that prevented him from knowing the wrongfulness of the alleged acts. *Page 8 
 {¶ 18} Further, the trial court stated that although defense counsel thought Shurn's note evinces "odd behavior,"[13] he did not think that there was a significant difference from the behavior the Court Psychiatric Clinic observed and on which it based its evaluation. Finally, the record does not indicate that defense counsel found Shurn uncooperative, disagreeable, or unable to fathom the trial strategy.
 {¶ 19} Moreover, one could infer, from the content of the note, that Shurn was questioning whether Juror No. 4 was a witness to the alleged crime, and if so, should not be seated on the jury. Consequently, if this inference is made, one could conclude that Shurn was actually assisting in his defense, and therefore was competent to stand trial.
 {¶ 20} After reviewing the record and examining the totality of the evidence on the issue of competency, we conclude that there was competent, credible evidence before the trial court to support a finding of competency to stand trial. The trial court had sufficient evidence to indicate that Shurn was presently capable of consulting with his attorney. As such, this Court will not disturb that finding. Accordingly, we overrule the first assigned error.
 Motion for Acquittal *Page 9 {¶ 21} In the second assigned error, Shurn argues the trial court erred in denying his motion for acquittal because the evidence was insufficient to support his conviction for burglary. We disagree.
 {¶ 22} The sufficiency of the evidence standard of review is set forth in State v. Bridgeman:[14]
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[15]
 {¶ 23} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks, [16] in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime *Page 10 
proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 24} After reviewing the evidence in a light most favorable to the State, we find that the evidence, if believed, could convince a rational trier of fact that the State had proven beyond a reasonable doubt each element of the charge of burglary.
 {¶ 25} In the instant case, Shurn was convicted of burglary, in violation of R.C. 2911.12(A)(1), which provides in pertinent part:
 "(A) No person, by force, stealth, or deception, shall do any of the following:
 "(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense * * *[.]"
 {¶ 26} At trial, Mabrey testified that Shurn pushed his way into the house through the side door, that she unsuccessfully tried to push him out the door, and that she asked him to leave, but he refused. Mabrey's mother, Paula, testified that she was awakened by the screaming, and she observed her daughter trying to prevent Shurn from entering the house.
 {¶ 27} In addition, both Mabrey and her mother, Paula, testified that Shurn was naked and masturbating in everyone's presence, including the three children under five years old. The responding police officers testified that they observed Shurn *Page 11 
sitting on the couch under a comforter, naked and masturbating. Further, the police officers also observed that the side door had been kicked in.
 {¶ 28} Consequently, viewing the evidence in the light most favorable to the State, we conclude that any rational trier of fact could have found that the State proved all of the essential elements of the charges beyond a reasonable doubt. Thus, the trial court properly denied Shurn's motion for acquittal. Accordingly, we overrule the second assigned error.
 Manifest Weight {¶ 29} In the third assigned error, Shurn argues his convictions were against the manifest weight of the evidence. We disagree.
 {¶ 30} In State v. Wilson,1[17] the Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, *Page 12 678 N.E.2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."
 {¶ 31} As discussed in our resolution of the second assigned error, Shurn's convictions were based on substantial and sufficient evidence. Mabrey and her mother testified that Shurn was naked when he entered the house and that he proceeded to masturbate in front of the children. The responding officers observed Shurn naked and masturbating upon their arrival.
 {¶ 32} We conclude Shurn has failed to demonstrate that his convictions are against the manifest weight of the evidence. Accordingly, we overrule the third assigned error.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 13 
KENNETH A. ROCCO, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] The facts stated in the State's brief are verbatim to Shurn's statement of facts.
[2] State v. Berry (1995), 72 Ohio St.3d 354, 359.
[3] (1960), 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824.
[4] Id.
[5] State v. Smith, 89 Ohio St.3d 323, 329, 2000-Ohio-166, citingDrope v. Missouri (1975), 420 U.S. 162, 43 S.Ct. 896, L.Ed.2d. 103.
[6] State v. Kovacek (May 30, 2001), 9th Dist. No. 00CA007713, citing Godinez v. Moran (1993), 509 U.S. 389, 391,113 S.Ct. 2680, 125 L.Ed.2d 321, and State v. Bolin (1998), 128 Ohio App.3d 58,61-62.
[7] See State v. Williams (1986), 23 Ohio St.3d 16, 19, citingState v. Chapin (1981), 67 Ohio St.2d 437; State v. Bailey (1992),90 Ohio App.3d 58, 67, appeal dismissed, 68 Ohio St.3d 1212, 1994-Ohio-516;State v. Pruitt (1984), 18 Ohio App.3d 50, 59.
[8] State v. Hicks (1989),43 Ohio St.3d 72, 79; State v. Williams
(1986), 23 Ohio St.3d 16, 19; State v. Stanley (1997),121 Ohio App.3d 673, 685-686.
[9] State v. Williams, supra.
[10] State v. DeHass (1967), 10 Ohio St.2d 230, syllabus.
[11] Tr. 130.
[12] Tr. 131-132.
[13] Tr. 132.
[14] (1978), 55 Ohio St.2d 261, syllabus.
[15] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19, 23;State v. Davis (1988), 49 Ohio App.3d 109, 113.
[16] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[17] 113 Ohio St. 3d 382, 2007-Ohio-2202. *Page 1